Next case is 091516 I-mei Frozen Foods v. United States Good morning, Your Honor, so may it please the court. This court should reverse the Court of International Trade's refusal to accord the proper amount of deference to the Department of Commerce's determination of the proper constructed value profit for I-mei calculated under a statutory alternative that provided that Commerce could use any other reasonable method for determining constructed value profit in this instance. This case is essentially about deference owed to the Department of Commerce as this court has stated in on many occasions Commerce is the master of the anti-dumping law. The Supreme Court's Eurodiff decision made it very plain that the issue in deciding cases such as this is not whether the trial court's reasoning or alternative method for determining a particular value was better than what Commerce did but rather whether what Commerce did was reasonable and this case unlike a lot of other cases that come before this court involving the Department of Commerce is even is a case where even more attention should be given to the deference owed unlike most Chevron step two cases in which there is a statutory provision which is not completely filled in by Congress and the Department of Commerce is essentially filling a gap by making a determination where Congress hasn't spoken. In this case of section 1677 B to B which provides a very broad one of the broadest expressions of discretionary authority that has been it's given to the Department of Commerce to determine constructed value in this instance using any other reasonable method and that provides quite a bit of discretion. We're not suggesting of course that there is some super Chevron standard to be applied in a case like this but certainly the nature of this statute this broad level of deference afforded should have been considered more by the trial court. We're talking about statutory interpretation here right 1677 and didn't didn't the Court of International Trade hold that any other reasonable method could not include the ordinary cost of trade limitation because it was in 2A and not B3. Well basically the point he he actually didn't specifically say that the statute alternative three excluded the possibility forever of commerce including or excluding below-cost sales because it's it's in the statute that there is no limitation in alternative three to to use below cost or ordinary out of the ordinary course of trade sales but what the trial court decided and we believe incorrectly was that commerce had somehow in interpreting alternative three included in it a general preference a statutory preference for the exclusion of below-cost sales because of the exclusion of below-cost sales in what is referred to as the preferred method of calculating CV profit in section e2a and as we've stated in the briefing that was essentially a straw man argument which misread commerce's reasoning behind what commerce did and what commerce did in this instance was to recognize that in an alternative three there is broad discretion to use below-cost sales in some instances to exclude below-cost sales in some instances Congress had pretty much left it wide open and that it was reasonable not as a matter of reading into alternative three a statutory preference but it was reasonable to mimic the statutory preference that is expressed directly in section e2a of the statute and as we've argued in our briefing more fundamentally across all of the normal value ordinary course of trade which in this instance we're talking primarily about below-cost sales ordinary course of trade also is a phrase which refers to the need for commerce in determining normal value across a number of these methods to eliminate certain below-cost sales that have exceeded or below a certain cost over a certain period of time and to exclude in many instances affiliated sales. You're just arguing this case not that ordinary course of trade always excludes below-cost sales. Correct and that was never a that was never stated in either the original issues and decisions memorandum that commerce published along with the original investigation results or in the remand determination that the court criticized in its decision. It's not to be the court's concern that instead of this calculation being driven by the facts or specific circumstances in this case that the determination was driven by a statutory interpretation of some that would amount to a flat-out rule that would be applied in every case. It was a misreading and you're correct in characterizing exactly what judge Dantzu felt was the problem with commerce's determination but it's a misreading of the reasoning in the remand determination. They've never determination that in fact in some cases in which constructed value profit is calculated under alternative three below-cost sales are included. They're included primarily in those circumstances in which the calculation is based on financial statements and other broad data that doesn't involve the subject goods and under under investigation and therefore the transaction specific information that would be required and the cost information that would be required to determine whether the sales were below cost isn't available. So there are many instances and in fact it would seem that in most instances in which alternative three is utilized by commerce it isn't this fact pattern. What made this fact pattern unique or unusual at least was the fact that here because the constructive value profit for Taimé was was being calculated based on the data from the other respondents in the investigation dealing with the subject merchandise there could be a exclusion of below-cost sales which might normally not be possible. And I guess in this case you have data available with respect to the other respondents so that a calculation was made under section A and those calculations included matters in the ordinary course of trade excluded the below cost. Correct. So commerce's rationale as I understand it is that a proper comparison and a proper calculations not include the below-cost amounts. Well the reasoning was partially based on the availability of the data which I just explained is not common in many of these cases in which by the time you get to alternative three and recognizing that this is also a facts available instance where alternative three was calculated without reference to the profit cap because there wasn't sufficient data regarding home sales in Thailand of either the subject merchandise or even goods in the same class or category as the subject merchandise to allow for the calculation of the profit cap. So commerce was essentially using alternative three in a facts available circumstance as permitted under section 1677 E. And in that circumstance where this data was available and where it was there was a consistency that they were trying to foster across different respondents in the same investigation the reasoning going that we calculated the profit for these two other respondents Rubicon Group and Union Frozen using Canadian sales excluding the out of the ordinary course of trade sales that were below cost and so since we're using that very same data for the purposes of calculating Tai Mei's CV profit it would seem to be unfair or have some inconsistencies with using that data differently for Tai Mei than it was used for the other respondents in the same investigation. And this is not unprecedented as was pointed out in remand determination in in cases such as the administrative determination involving fresh Atlantic salmon from Chile you know commerce has in other circumstances used the weighted average of other respondents profit calculations in a similar way. But essentially I think Judge Lynn you really pointed to what we believe is the problem with the trial courts decision is that the reasoning behind it that somehow commerce is tying its own hands here by having read into alternative three a statutory presumption or or some sort of a preference that would be applied across the board or in many other cases other than one case with very specific and unique fact pattern like this one is not supported by the language of commerce's determination. So what we're stuck with here is an instance where like I said this is very broad deference to use any other reasonable method in a circumstance which is also in a facts available circumstance where commerce also is a fairly broad discretion in determining values where information you know based on the availability of information in a circumstance where there's no market in Thailand for this warm water shrimp no viable market at least for the purposes of calculating a normal value no market which is viable for calculating time a profit under alternative one which would essentially be using their own data for sales of merchandise in the same class or category of merchandise there wasn't any data for that and so under alternative three in this circumstance this was an eminently reasonable way for commerce to have determined this and as as as I've pointed out you know commerce's determination here is what should govern in the absence of conflict with congressional. All right let's hear May it please the court. I'll move directly to some of the issues that Mr. White has discussed. I heard Mr. White say that the question of whether sales outside the ordinary course of trade could be included or excluded under alternative three is left wide open by the statute. These sales could be included in some cases excluded in others wide open. That seems to me to be directly at odds with the position that commerce has taken throughout this case and throughout the CIT. Commerce has taken the position that there was a congressional preference inserted into the statute the exclusion of sales outside the ordinary course of trade. The very existence of subparagraph a I use that term to refer to section 773 e2a of the URA the very existence of subparagraph a creates a congressional preference for the exclusion of sales outside the ordinary course of trade. That position is unreasonable. It's an unreasonable reading of this simply drawing or observing the structure of this statute and drawing some parallelism between sections a and the determinations that should be made under section B and I don't I don't think they're stating that there is a per se rule or a requirement or an or even a presumption. Commerce's position seems to be both that there's a congressional preference and in this case that it was reasonable to interpret the statute to mimic subparagraph a in particular the sales outside the ordinary course of trade restrictions subparagraph a. But even if that argument was somehow viewed as being in appropriate there were other bases for their determination of how to calculate the profit under the facts of this case and isn't that entitled viewing all of their calculation in the entirety to deference as being reasonable. Commerce's interpretation is owed Chevron deference but Commerce's interpretation in this case is not reasonable and its decision based on the three facts that is cited on remand is not based by not based on substantial evidence. Commerce cited in fact only three facts for the first time on remand. Two of those facts are really conditions precedent for the selection of any respondents in any dumping investigation that are not related to Tyee Mae. None of the facts are rationally connected in any way to Tyee Mae's experience and to the calculation of a preference argument even looking at the factual situation there is no evidence on the record that based on two other respondents third country sales Commerce could reasonably draw a conclusion that Tyee Mae would have sold below cost and it's reasonable to exclude these sales outside the ordinary course of trade from Tyee Mae's CV profit calculation. What's more the statute that requires a reasonable method it requires more than just a reasonable method so it's not just the result but how Commerce got there. The SAA because I should note as Mr. White states any reasonable method is broad language it potentially gives a lot of discretion to Commerce and because of that in drafting the URAA Congress sought to to make sure that that discretion was not abused and in the SAA Commerce is required under alternative three to give a description of the CV profit methodology chosen and an explanation for why it was chosen so not only is important how Commerce got there but why the why must be reasonable in this case it's not a reasonable explanation that Commerce chose to get to this rate because the data were available and to mimic a different provision that doesn't even apply all the parties are in agreement that subparagraph a does not apply in this case and therefore it should have no further relevance in interpreting subparagraph B. There's no evidence no indication that the three alternatives of subparagraph B were meant to replicate subparagraph A or were meant to get to the same result that one would obtain under subparagraph A. They're clearly different as written alternative one applies to sales in the same general category of products. Alternative B sorry alternative two applies to other respondents profit experience while subparagraph A is very explicit it only applies to the respondent under investigation and to that respondents actual amounts incurred the foreign like product. That cannot be carried over into this case and as the CIT said it's not possible to glean from the language of subparagraph A a congressional intent to exclude sales outside the ordinary course of trade in the other three alternatives alternative three in particular in this case. Commerce's position based on its statutory preference of the state is not reasonable if one looks at the statute it does not have any ordinary course of trade restriction in alternative three. Had Commerce had this preference when it preference in any number of ways either in the statute or the legislative history any number of ways without strictly inserting a cross the board restriction in alternative three but there is none there's not a hint of a preference in fact the legislative history and the SAA state that a methodology under alternative three will be determined on a case-by-case basis and the decision whether to exclude sales outside the ordinary course of trade will be made on a case-by-case basis and the United States notes in the SAA that it is not making any benchmarks or or methods for the application of alternative three. Shortly after the promulgation after the passage of the URA Commerce promulgated its implementing regulations and the preamble to those regulations Commerce again notes its understanding that the decision whether to exclude sales outside the ordinary course of trade must be made on a case-by-case basis and in fact Commerce's language is that there may be instances where it is necessary to exclude sales outside the ordinary course in order to obtain a reasonable profit method so Commerce's understanding shortly after the passage of the URA is that if anything Commerce's normal position would be to include all such sales under alternative three unless it can be shown that it were necessary to do so this is not a case in which it is necessary to do so there is still a fair profit rate that Commerce calculated on its second remand by including all of the third third country sales of the two other respondents including sales outside the ordinary course of trade moreover it's important that Commerce has never before this case articulated or relied upon the preference that it asserts before this court it is never since the passage of the URA issued a decision or in this case cited a decision that puts forth this preference or exclusion of sales outside the ordinary course of trade and in fact Commerce has relied has taken methodologies in other cases that run this case has never seen fit in all of the alternative three cases to mention this preference or to rely on it undermines the argument that this is a congressional preference that must have been placed in the statute at the time that Congress drafted it there's nothing in this statute that would preclude Commerce from determining on a case-by-case basis to exclude below cost sales correct that's correct it must be made on a case-by-case basis based based on the facts and circumstances of a particular case in this case there are no facts or circumstances to support exclusion of sales in the ordinary course of trade well Congress did set for some reasons why they did what they did and why they excluded below cost sales they talked about the similar sales and same method of determining CV profit was available for the other two parties there was there was there were some reasons you may disagree with the strength or the propriety of those reasons but there were reasons stated there were reasons but there are not reasons based on facts in this case that are specific to tie you may nothing none of the reasons given by Commerce were related to tie you may are based on the facts that show that the methodology was reasonable for tie you may yes all three respondents were producers and exporters of frozen shrimp from Thailand that's why they're all respondents in this case but the fact that they're all respondents does not mean that one company's experience would mimic another company's experience especially since I may do not even sell in Canada the other two respondents home markets in this case but of course you you know they're operating under this sort of default provision on section three that and those cases are traditionally cases where there's an absence of a lot of facts and that's why you'll find yourself in that category so they did draw some parallels there was sort of overlapping periods of sales it's similar activities and similar products of things of this sort so why is it appropriate to reach the conclusion with this sort of deferential standard in place that what they did was unreasonable given the fact that this statute doesn't preclude them from the fact stated at best would support the use of the other two respondents third country sales as a general data set but none of those facts support the exclusion of sales outside the ordinary course of trade commerce brings up the availability of data as a factor that's simply not a factor here because the data are available to either include or exclude sales outside the ordinary course of trade there's no question of whether the data are available in either direction that's not a factor that indicates that it is reasonable the methodology reasonable it's not substantial evidence to support commerce must make some decision based on substantial evidence that this is reflective of time a that this is in some way related to time a under the standard of review and I disagree that it's and in fact I suppose I agree with mr. white that it's not a super Chevron standard this is the regular hold Chevron standard and substantial evidence standard there is no evidence on the record that it is reasonable in this case given the choice to include or exclude sales based on a case-by-case determination that the fact that the other two respondents may be sales outside in ordinary course of trade is in any way reflective of time a or in any way indicates that I may may have made those sales there's no comparison of the company's selling practices or cost structures indicate that time a even if it had a viable market in Canada or Thailand would have made sales below cost or even if it's sold at the same prices of the other two respondents that that would have been a below-cost sale or sale outside the ordinary course of trade nothing in the department's determination or first remand supports conclusion that it it's reasonable to take the other two companies profit experience in a market in which time a did not even participate and to exclude those sales it's very respondent specific to exclude sales outside the ordinary course of trade because it's based on a specific respondents selling practices a cost structure and there's no evidence in the record to to tie those to time a in fact the ordinary course of trade restriction it applies in the statute in two places and subparagraph a an alternative to but it generally applies where there are actual data on the record either for the respondent under investigation in the case of subparagraph a or for the particular market the home market in this case Thailand in the case of alternative to something to tie it either to the respondent to the home market to something that we could say this is substantial evidence something reasonable that this is maybe what time a would have done had it had a viable home market but there's no evidence of that in this case and commerce as your honor mentions commerce does bring up a consistency rationale that it's a reason to treat time a like the other two respondents I think that argument is a red herring these are three different respondents in very different situations time a did not have a viable comparison market the other two did have viable comparison markets in CV profit their sales outside the ordinary course of trade were required to be excluded under the statute for time a there is no such requirement and in fact I may has not had a sales below cost allegation against it or finding against it time a is using constructed value for its entire normal value whereas the other respondents are using constructed value only for the comparison of a few transactions in some of these are different respondents and commerce is an obligation of the statute to calculate dumping margins as accurately as possible for each selected respondent and there's no reason to treat these three respondents the same just for the sake of sameness if there were five respondents under investigation and two sold below cost in in Canada there's no reason to believe based on that fact alone that the other three would be selling below cost and that it would be reasonable to exclude their sales and the CV profit calculation there are no further questions from the court I think it's appropriate for this court to affirm the decision of CIT thank you thank you white a few quick points your honors first point I want to make is I think there's a sense that it doesn't really matter if below cost sales are excluded or included because the particulars of various sections of section II a and B either refer to ordinary course of trade or don't refer to ordinary course of trade as we've pointed out in the briefing and as commerce pointed out in its decision there's a very strong reasons to believe looking at the language of the statute the language of the SAA that Congress had a reason for for structuring this the way it was structured and the reason was is that in some instances below cost sales could be considered and excluded where appropriate and in other cases commerce would be relying on broad data sets that wouldn't allow for backing out transactions that are below cost that's part of the reason that alternative one that reads the way it reads it's because when you're dealing with a product or a group of products that aren't the product that's the subject of the investigation for which commerce has reams of data having from from interested parties there will be no easy way and so as a matter of administrative convenience above all probably commerce is given the authority and the direction and by Congress to make those terminations on the basis of other you know financial information in the instances where the subject merchandise is under consideration those below cost sales should normally be eliminated if it's appropriate based on the availability of the data because that's in keeping with the structure and the purpose of the normal value statute as a whole and is it appropriate to use the same calculation for the for time a has has made with the other two respondents well one point that's made it to answer your question your honor is that the facts are that commerce pointed to or not facts specific to time a but that's a part that that argument could be made in a number of different contexts which are directly stated in the in the statute for example these alternatives are not are not provided in any hierarchical sense commerce is free if it was a if it was possible to use any of them could have used any of them in an alternative to for example the constructs the constructed value profit is determined based on the weighted average of the other respondents in the looking at the the facts that are specific to the respondents such as tiny may either so within the structure of the statute itself is the idea that this profit calculation might be calculated on the basis of other parties experience that's not uncommon at all particularly in facts available circumstances so across the board when commerce makes determinations using facts available in determining values for the purposes of normal value it would be it wouldn't be unusual for the individual circumstances of a particular respondent to not be reflected in the data that is used to determine the value for that party and so alternative one is one of them or excuse me alternative two is one of them and and to further answer your question your honor commerce made it very plain in the remand determination in this case that there was a reason to believe that these were other respondents in the same investigation selling the same product a lot of that product is going to the United States in the instance of the other two Rubicon and Union Frozen they had an all you know a viable third party market third country market in Canada when commerce determined that looking at the the ordinary course of trade sales of those other respondents in Canada that it was a profit could be determined based on the ordinary course of trade sales record recognizing that this this shrimp is sold for profitable prices in the third country market that it was reasonable to apply that to another respondent in the same investigation where they were using the exact same data to calculate that's a thorough answer mr. thank you your honor Gershberg and the fairness since this went on quite some time if you would like to respond to that last point go free thank you I appreciate that I'll be very brief I would just like to make clear that this is not a facts available case in terms of facts available because information were not on the record or because a respondent didn't participate I may participated fully in this investigation facts available is used in the sense only that the profit cap is not being used in this case but it's important to look at the evidence in the record the other three respondents it's true they were also respondents but it's not possible to infer from the fact that there were three respondents all selling in the United States market that's not sufficient which only deals with u.s. sales that's not sufficient to infer that the other two respondents third country sales in Canada market in which time a did not even participate would be reflective of any way of timing sales therefore it's not based on substantial evidence there's no factual basis to to make a reasonable conclusion as to tie you may see the profit thank you that's sufficient right mr. white yes all right cases submit submitted